THIRD DIVISION
September 30, 2008

1-07-1807

ZURICH AMERICAN INSURANCE COMPANY,　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff-Appellee,　　　　　　　　　　　)　　　Appeal from the
　　　　　　　　　　　　　　　　　　　　　　　　　　)　　　Circuit Court of
　　　　　　　　v.　　　　　　　　　　　　　　　　　)　　　Cook County.
　　　　　　　　　　　　　　　　　　　　　　　　　　)
KEY CARTAGE, INC., an Illinois Corporation, WEST　)
BEND MUTUAL INSURANCE COMPANY, a　　　　　)
Wisconsin Corporation, TERRY G. WASHINGTON and　)
SEVALA SALKIC, as Special Administrator of the Estate　)
of Enes Salkic, Deceased,　　　　　　　　　　　　)　　　Honorable
　　　　　　　　　　　　　　　　　　　　　　　　　　)　　　Dorothy Kirie Kinnaird,
　　　　　Defendants-Appellant.　　　　　　　　　)　　　Judge Presiding.


JUSTICE QUINN delivered the opinion of the court:

Defendants West Bend Mutual Insurance Company (West Bend), Key Cartage, Inc. (Key), and Terry G. Washington appeal from an order of the circuit court of Cook County granting summary judgment in favor of plaintiff, Zurich American Insurance Company (Zurich), in a declaratory judgment action brought by Zurich to determine insurance coverage. The underlying litigation, a wrongful death action arising from a fatal truck accident, was brought by the estate of Enes Salkic against West Bend's insureds, Key and Washington. The circuit court found that West Bend owes the primary duty to defend and indemnify Key and Washington in the underlying litigation. On appeal, we determine whether the circuit court properly granted summary judgment

in favor of Zurich and against West Bend. Within this determination, as a matter of first impression, we decide whether section 7-317(b)(2) of the Illinois Vehicle Code (625 ILCS 5/7-317(b)(2) (West 2006)) applies to insurance policies issued to commercial truckers. For the following reasons, we reverse the decision of the circuit court.

## I. BACKGROUND

This insurance coverage action has its origins in a motor vehicle accident that occurred on October 31, 2002, and resulted in the death of Enes Salkic. At the time of the fatal truck accident, Washington, an employee of Key, operated the truck. On December 8, 2003, Sevala Salkic, as special administrator of the estate of Enes Salkic, filed suit in the circuit court of Cook County against Key, Washington and Rose Cartage Services, Inc. (Rose), alleging that Washington's negligent operation of a tractor trailer caused the accident. The underlying plaintiff later amended her complaint to add Franklin Truck Group, Inc. (Franklin), as a defendant. The underlying plaintiff seeks damages in excess of $50,000.

At the time of the accident, Key, Rose and Franklin were all part of a family-run business. Key is an Illinois corporation with its principal place of business located in Highland, Indiana. Key is a trucking company owned by Sharon and Corrie Frank. Essentially, Key operates as a "carrier-for-hire." Key specializes in hauling heavy oils and asphalt.

Rose is an Illinois corporation with its principal place of business located in Lansing, Illinois. Rose is a trucking company owned by David Bult, the brother of Sharon Frank. Like Key, Rose operates as a "carrier-for-hire." Rose primarily hauls salt, limestone and other material necessitating dump trucks. Sharon Frank managed the day-to-day operations of both Key and Rose. Her duties

2

included the leasing of equipment and the procuring of insurance coverage for equipment used by both Key and Rose.

Franklin is an Illinois corporation with its principal place of business located in Lansing, Illinois. Franklin, owned by Sharon and Corrie Frank, is an equipment company that leases semitrailer trucks to other companies. Franklin owned the truck involved in the underlying accident. In April 1997, Franklin leased the truck, a 1997 Kenworth semitrailer tractor, to Rose.

In the April 1997 lease agreement, Franklin agreed to give Rose exclusive use, possession and control of the subject truck. Franklin, as lessor, agreed that "while the [truck] was being operated for [the lessee, Rose], it shall be used exclusively in the business and service of [Rose] in compliance with all applicable rules, regulations, instructions and tariffs applicable to [Rose]." Franklin also agreed to furnish drivers to operate the equipment in question and warranted that those drivers would be competent and qualified. Rose agreed that, during the term of the lease, "the said vehicle equipment while being operated for [Rose], shall be solely and exclusively under the direction and control of [Rose] who shall assume full common carrier responsibility to shippers and the general public for loss or damage to cargo transported in such motor vehicle equipment and for the operations of such motor vehicle equipment."

In addition, Franklin agreed that, during the term of the lease, it would obtain and maintain, at its own cost, extensions of its public liability and property damage insurance in such companies and in such amounts as approved by Rose. Furthermore, Franklin agreed to indemnify and "save harmless" Rose against legal liability for any loss resulting from injury or death of such operating personnel and any loss or damage to persons or property resulting from negligence, incompetence

or dishonesty of any such operating personnel. The lease agreement also stated that Franklin "agrees that [Rose] shall not be liable for any loss or damage to or destruction of said leased vehicle and releases [Rose] from and against any claim or demand arising therefrom." Finally, the lease agreement stated that "[t]he operations to be conducted under this lease are limited to transportation performable under the certificates of public convenience and necessity in I.C.C. Docket Number MC-156863."

The subject truck was scheduled on Zurich policy number TRK2725644-00, issued to Rose, and effective August 24, 2002 through August 24, 2003. The Truckers Coverage Form provides for "Who Is An Insured" as follows:

> "a. You for any covered 'auto'.[1]
>
> b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow except:
>
>> (1) The owner or anyone else from whom you hire or borrow a covered 'private passenger type auto'.
>>
>> (2) Your 'employee' or agent if the covered 'auto' is a 'private passenger type auto' and is owned by that 'employee' or agent or a member of his or her household.
>>
>> (3) Someone using a covered 'auto' while he or she is working in a business of selling, servicing, repairing, parking or storing 'autos' unless that business is yours.
>>
>> (4) Anyone other than your 'employees', partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower or any of their 'employees',

---

[1] The policy defines "auto" as a land motor vehicle, trailer or semitrailer designed for travel on public roads.

while moving property to or from a covered 'auto'.

(5) A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered 'private passenger type auto' owned by him or her or a member of his or her household.

c. The owner or anyone else from whom you hire or borrow a covered 'auto' that is a 'trailer' [including a semitrailer] while the 'trailer' is connected to another covered 'auto' that is a power unit, or, if not connected:

(1) Is being used exclusively in your business as a 'trucker';[2] and

(2) Is being used pursuant to operating rights granted to you by a public authority.

d. The owner or anyone else from whom you hire or borrow a covered 'auto' that is not a 'trailer' while the covered 'auto':

(1) Is being used exclusive in your business as a 'trucker'; and

(2) Is being used pursuant to operating rights granted to you by a public authority.

e. Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability."

The Zurich policy also provides that "none of the following is an 'insured'":

"a. Any 'trucker' or his or her agents or 'employees', other than you and your 'employees':

(1) If the 'trucker' is subject to motor carrier insurance requirements and meets them by a means other than 'auto' liability insurance.

---

[2] The policy defines "trucker" as "any person or organization engaged in the business of transporting property by 'auto' for hire."

> (2) If the 'trucker' is not insured for hired 'autos' under an 'auto' liability insurance form that insures on a primary basis the owners of the 'autos' and their agents and 'employees' while the 'autos' are being used exclusively in the 'truckers' business and pursuant to operating rights granted to the 'trucker' by a public authority."

Zurich has alleged throughout the course of its declaratory judgment action that section a(2) of this portion of the policy is a reciprocal coverage provision that bars omnibus coverage to Key and Washington.

The Zurich policy also includes an endorsement for an additional insured "as required by contract/agreement," although Franklin was not specifically listed on the schedule. Another endorsement, entitled, "Hired Autos Specified As Covered Autos You Own," included "all hired autos under long-term contract," although, again, Franklin was not specifically listed on the schedule. There was no specific mention of Franklin as an insured in the entire Zurich policy. Zurich defended Rose and Franklin in the underlying litigation pursuant to its policy.

Key was insured by West Bend under policy number CPC0292437 04 and an umbrella policy under policy number CPC0292438, effective June 1, 2002, through June 1, 2003. The truck involved in the accident was not scheduled on either of the West Bend policies.

In October 2002, Key had completed its asphalt hauling season and sought additional work during what was typically considered to be a slow period for construction. Key entered into an oral agreement to haul garbage for Navajo Transport (Navajo). Navajo had a central staging area where it would bring all the trash from its route trucks, transfer the trash into trash-hauling trailers, and then retain carrier-for-hire trucking companies to pull their trailers to various landfills. Key hired Washington as one of its drivers approximately two weeks before the accident. At the time of the

accident, Washington was driving the truck that struck the decedent's automobile. Key had borrowed the truck from Rose.

By deposition, Corrie Frank testified regarding the usage of the truck on the date of the accident:

"What we had is we had the leased Freightliners hauling asphalt and they had a higher fifth wheel than what we could use.

The assets we had available to us was with the Kenworths that had the lower profile fifth wheels and they also are equipped with hydraulics.

That unit [the subject truck] was just employed for a short period of time to go ahead and employ this [Navajo garbage hauling assignment]. The long term to this thing was to put the tractors back with Rose Cartage, because that's where we used the hydraulics, for the dump trucks. And then we'd go out there and lease from PacLease or Penske the proper units that have -- would have probably the correct fifth wheel setup that doesn't have hydraulics that we see out there because the units are used as a tipper to go into the landfill.

So the overall effect was that this was a two-term -- it was emergent -- it was an emergency or an on-the-spot thing because we had to do something immediately to employ the proper equipment.

And then in the long term if this was going to work out then

we could have still leased other equipment to fit the need for that." In short, the truck that was leased by Franklin to Rose was borrowed by Key to haul waste on the date of the accident. According to Corrie Frank, the truck was to be returned to Rose had the accident not occurred.

Sharon Frank testified by deposition that Rose did not receive any economic benefit from Key's oral agreement with Navajo to haul waste. She stated, "[a]ny time that truck rolled Franklin benefitted unless, of course, we didn't get paid for it. But at any time the truck rolled in theory it was performing service for which it would be paid and of course, that would ultimately benefit Franklin." She further explained that "the whole way that the system was set up was that the equipment owners in the end saw the income realized." Although Key used the truck, Franklin bought the fuel, paid maintenance and "whatever else came up." Key's signage and Illinois Commerce Commission (ICC) placards were on the truck at the time of the accident so that shippers could identify Key as the operator of the truck.[3]

The affidavit of Sharon Frank stated that Key never paid Franklin for use of the truck involved in the accident. The affidavit also stated that, "[b]ecause the tractor involved in the Salkic accident was scheduled on the Zurich policy, it was [her] expectation that the Zurich policy would provide primary coverage to Key for the Salkic lawsuit." In addition, the affidavit stated that "[i]t was Franklin Truck Group's understanding that Franklin Truck Group was an additional insured on

---

[3] Under section 18c-4701(1) and (2) of the Illinois Vehicle Code (625 ILCS 5/18c-4701(1), (2) (West 2006)), Key's placards and ICC registration constituted its operating rights by a public authority.

the Zurich policy issued to Rose Cartage based upon the 'LESSOR-ADDITIONAL INSURED AND LOSS PAYEE' endorsement and the 'HIRED AUTOS SPECIFIED AS COVERED AUTOS YOU OWN' endorsements of the Zurich policy."

An April 28, 2003, coverage opinion letter from West Bend's counsel to West Bend's senior claim representative stated that West Bend "will have a primary duty to defend and indemnify Key Cartage, Inc., as well as its driver, Terry Washington. Zurich's policy will also serve as a co-primary policy with your policy, and you will split all defense and indemnity obligations." West Bend's counsel pointed out "a unique situation" because of the fact that West Bend issued a commercial auto coverage form to Key, whereas Zurich issued a trucker's coverage form to Rose. Each form has a different "other insurance clause." West Bend's counsel noted the language from Zurich's "other insurance clause" provides excess coverage for any covered "auto" while hired or borrowed from another trucker. West Bend's "other insurance clause" provides excess coverage for any covered "auto" not owned by Key. Because the policies contain "mutually repugnant other insurance clauses" where the insurers are claiming to be excess carriers, the "other insurance" clauses from both policies essentially "cancel each other out." West Bend's counsel stated for this reason, Zurich and West Bend are co-primary insurers.

Zurich initially filed its complaint for declaratory judgment on February 5, 2004, against Key, West Bend, Washington and Salkic. On November 12, 2004, Zurich filed its first amended complaint for declaratory judgment, in which it asserted that its policy requires reciprocal coverage for the owners of vehicles it insures in exchange for coverage under its policy. Zurich noted that, under the West Bend policy, a party other than Key or its employees is covered only while that party

is using a covered auto. Zurich asserted that, because Rose was not using the vehicle at the time of the accident, the West Bend policy does not provide reciprocal coverage and, therefore, Zurich was precluded from coverage of Key and Washington as insureds for the underlying accident.

West Bend counterclaimed, arguing that, because Key and Washington were using the subject truck, which Rose had hired and given permission for Key to use, Key and Washington qualify as insureds under Zurich's policy section providing, "Who Is An Insured." West Bend also contended that Zurich's reciprocal coverage provision violates Illinois public policy requiring the insurer of a vehicle to provide primary insurance to the permissive user of said vehicle. West Bend requested that the circuit court enter a declaratory judgment that Zurich owes a primary duty to defend and indemnify Key and Washington.

On October 31, 2005, Franklin and Rose were both voluntarily dismissed from the underlying action.

On June 27, 2006, counsel for West Bend entered into a stipulation agreement, which stated that West Bend has not reserved its rights to deny coverage for the underlying action and is providing a defense to Key and Washington. West Bend acknowledged its duty to indemnify Key and Washington for any judgment entered against them in the underlying action subject to the limits of liability in the West Bend policy. West Bend entered into the stipulation agreement without prejudice to its contention that Zurich owes the primary duty to defend and indemnify Key and Washington.

On July 7, 2006, Zurich moved for summary judgment on all claims with respect to its first amended complaint for declaratory judgment and against defendants on all claims as set forth in their

amended counterclaims. West Bend, Key and Washington filed a cross-motion for summary judgment on August 2, 2006.

On October 26, 2007, the circuit court conducted a hearing on the parties' cross-motions for summary judgment. Initially, the parties agreed that there were no facts in dispute that would prevent the court from deciding the cross-motions. Counsel for Zurich stated that there was a provision within the lease agreement between Franklin and Rose that required Rose to provide insurance to Franklin. Counsel for Zurich stated that, "pursuant to an additional insured endorsement on the back of the Zurich policy there is an argument that Franklin qualified as an insured under the Zurich policy." Counsel for Zurich agreed that Sharon Frank did not procure insurance specifically for Franklin.

Zurich argued that its reciprocal coverage provision does not violate Illinois public policy. Zurich contended that the Illinois Supreme Court's holding in State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group, 182 Ill. 2d 240 (1998), that a liability policy issued to the owner of a vehicle must provide omnibus coverage to permissive drivers, was limited in scope to the portion of the Illinois Vehicle Code encompassing the Safety and Family Financial Responsibility Law (625 ILCS 5/7-100 et seq. (West 2006)) (Family Responsibility Law). Zurich also argued that section 7-601(b)(2) of the Illinois Vehicle Code (625 ILCS 5/7-601(b)(2) (West 2006)), includes an exception to the requirement to provide omnibus coverage for "vehicles required to file proof of liability insurance with the Illinois Commerce Commission."

The circuit court asked Zurich's counsel if there was Illinois authority that determined whether the omnibus coverage requirement applies to the Illinois Commercial Transportation Law

(625 ILCS 5/18c-1101, et seq. (West 2006)). Counsel for Zurich replied, "no," and stated that West Bend gave far too expansive of an interpretation of the Universal Underwriters case. Zurich argued that the Commercial Transportation Law, which governs trucks, is administered independently of the Family Responsibility Law and, therefore, is a completely independent statutory scheme.

The circuit court next questioned Zurich with respect to its reciprocal coverage provision. The court stated:

"[C]an you tell me what in the world in the Zurich's policy this Subsection (a)(2) means? That is written so obtusely. I had to read it back and forth a zillion times. What does that mean?"

Zurich explained that the reciprocal coverage provision says that any trucker, in this case, Key, who fails to insure the owner of the truck, in this case, Franklin, on a primary basis and who is using the truck for their exclusive use and pursuant to operating rights granted by the ICC must provide reciprocal coverage to Franklin. Without reciprocal coverage provided by Key to Franklin, Zurich is precluded from primary coverage for West Bend's insureds.

West Bend responded that, although no Illinois courts have addressed whether the omnibus coverage requirement applies to commercial transportation vehicles, the Illinois Appellate Court, Fourth District, in Pekin Insurance Co. v. Fidelity & Guaranty Insurance Co., 357 Ill. App. 3d 891 (2005), held that a business exclusion for coverage of a permissive user in the business of selling, servicing, repairing, parking, or storing autos violated Illinois public policy. West Bend pointed out that the Pekin Insurance case involved a tow truck towing a commercial van. In regard to whether Zurich's reciprocal coverage provision is ambiguous, West Bend asserted that the cases Zurich cited

in support of its argument that the provision is unambiguous were not applicable because they did not consider the validity or ambiguity of that provision.

Zurich replied with respect to the holding in Universal Underwriters that "in the context of what the court was addressing, it is an awful big stretch to suggest that they were ruling on this grand basis that this provision was going to govern everything within the context of the vehicle code because that is not what is before the court." Zurich also argued that Pekin Insurance was not applicable because that case involved a tow truck covered by an automobile insurance policy rather than a commercial truck insurance policy.

On June 5, 2007, the circuit court entered summary judgment in favor of Zurich on its first amended complaint for declaratory judgment and in favor of Zurich on West Bend's counterclaim and defendants' cross-motion for summary judgment. The court found:

"(a)    the 'reciprocal coverage' provision in Zurich's policy

is valid and unambiguous;

(b)    since West Bend's policy does not provide reciprocal

coverage to Franklin or Rose Cartage, no coverage is

afforded for Key Cartage or Washington under the

Zurich policy;

(c)    at the time of the accident, the truck in question was

in the 'exclusive use' of Key Cartage and being used

pursuant to the 'operating rights' granted to Key

Cartage by a 'public authority,' here the Illinois

13

1-07-1807

> > Commerce Commission pursuant to 625 ILCS 5/18c-4701(1) and (2); and

> (d) Zurich's policy does not violate public policy of the State of Illinois, and neither section 5/7-317(b)(2) [(625 ILCS 5/7-317(b)(2) (West 2006))] nor section 5/7-601(a) of the Family Responsibility Law apply to Franklin, Rose Cartage or Key Cartage which were operating at the time of the accident under the jurisdiction of the Illinois Commerce Commission and governed by the Illinois Commercial Transportation Law.  625 ILCS 5/18c-1101, et seq."

Defendants timely appeal.

## II.  ANALYSIS

Defendants argue on appeal that: (1) Zurich's reciprocal coverage provision is unenforceable because it violates Illinois public policy; (2) section 7-601(b)(2) of the Illinois Vehicle Code does not exempt insurance policies issued for commercial vehicles from the omnibus coverage requirement; (3) Illinois authority supports the extension of omnibus coverage under Section 7-317(b)(2) to West Bend's insureds, Key and Washington; and (4) Zurich's reciprocal coverage provision cannot be enforced because it is ambiguous.  Defendants request that this court reverse the circuit court's entry of summary judgment in favor of Zurich and enter summary judgment in favor of defendants or, alternatively, reverse the circuit court's judgment in favor of Zurich and remand

14

this cause to the circuit court with directions to enter summary judgment in favor of defendants.

Zurich responds that the circuit court did not err by granting summary judgment in Zurich's favor. Zurich asserts that its reciprocal coverage provision does not violate Illinois public policy. Zurich argues that commercial trucking, specifically, "motor carriers of property," are governed by a separate and distinct regulatory scheme under the Commercial Transportation Law. Zurich contends that section 7-601(b)(2) of the Family Responsibility Law specifically provides that vehicles required to file proof of liability insurance with the ICC are exempt from the requirements of section 7-317(b)(2) and instead are governed by the Commercial Transportation Law. In addition, Zurich asserts that the circuit court properly ruled that the reciprocal coverage provision is unambiguous, valid and enforceable.

## A. Standard of Review

Summary judgment is granted properly where the pleadings, depositions, admissions and affidavits, which are construed strictly against the moving party and liberally in favor of the opponent (RLI Insurance Co. v. Illinois National Insurance Co., 335 Ill. App. 3d 633, 643 (2002)), show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006). Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. Travelers Insurance Co. v. Eljer Manufacturing, Inc., 197 Ill. 2d 278, 292 (2001); Spirit of Excellence, Ltd. v. Intercargo Insurance Co., 334 Ill. App. 3d 136, 144-45 (2002). Reversal of summary judgment is warranted if, on review, a material issue of fact or an inaccurate interpretation of the law exists. Spirit of Excellence, 334 Ill. App. 3d at 145. Summary judgment

1-07-1807

and statutory construction matters are reviewed de novo. Midstate Siding & Window Co. v. Rogers, 204 Ill. 2d 314, 319 (2003); Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102 (1992).

B. Enforceability of Zurich's Reciprocal Coverage Provision Pursuant to Illinois Public Policy

Defendants assert Zurich's argument that its reciprocal coverage provision is not subject to the omnibus coverage requirement found in section 7-317(b)(2) is based upon a misinterpretation of section 7-601(b)(2). Defendants point out that there is no dispute that policies of insurance issued to commercial truckers such as Rose and Key are subject to the insurance provisions contained in the ICC. Defendants argue that the Illinois Supreme Court on two occasions has ruled that the omnibus coverage requirement of section 7-317(b)(2) applies throughout the Illinois Vehicle Code. Defendants contend that the omnibus coverage requirement of section 7-317(b)(2) applies to the insurance provisions pursuant to the Commercial Transportation Law, which is part of the Illinois Vehicle Code.

Zurich responds that the public policy concern regarding a permissive user of a motor vehicle, who may borrow a vehicle and cause injury or damage to others, simply does not exist in the intrastate trucking context. Zurich argues that defendants' arguments are based upon the wrong statutory scheme and should be rejected. Zurich contends that the Commercial Transportation Law, not the Family Responsibility Law, governs operation of intrastate motor carriers of property such as Key and Rose. Zurich asserts that, because Rose and Key were required to file proof of liability insurance with the ICC in order to obtain the necessary registration numbers to operate on public roadways as carriers of property for hire, the Commercial Transportation Law governs this dispute.

16

The supreme court in <u>Universal Underwriters</u> was the first to address the scope of section 7-317(b)(2). The question before the <u>Universal Underwriters</u> court was "whether a car dealer's garage insurance policy covers the liability of a separately insured customer who is involved in an accident while test-driving one of the dealer's vehicles." <u>Universal Underwriters</u>, 182 Ill. 2d at 241. During a test-drive, the customer, Rodney Luckhart, negligently collided with another vehicle owned by Vivian Carter, but operated by Raun Calinee. Luckhart had automobile liability coverage under a policy issued by the plaintiff, which paid a total of $9,092.15 to Carter and Calinee for personal injuries and property damage from the accident. The car dealership, Joyce Pontiac, was insured under a garage policy issued by the defendant. The plaintiff sought reimbursement for the accident from the defendant, alleging that the defendant's policy afforded primary coverage to Luckhart while test-driving Joyce Pontiac's vehicle. The defendant argued that a test-driver was only "required by law" to be insured if the test-driver did not have a liability insurance policy.

Initially, the <u>Universal Underwriters</u> court noted the language included in section 7-317(a) that defines the term "motor vehicle liability policy" and section 7-317(b)(2) as follows:

> " '§ 7-317 "Motor vehicle liability policy" defined. (a) Certification. -- A "motor vehicle liability policy", *as that term is used in this Act*, means an "owner's policy" or an "operator's policy" of liability insurance, certified as provided in Section 7-315 or Section 7-316 as proof of financial responsibility for the future ***.
>
> (b) Owner's Policy. -- Such owner's policy of liability insurance:
>
> ***
> 2. Shall insure the person named therein and *any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured*.' " (Emphasis added and in original.) <u>Universal Underwriters</u>, 182 Ill. 2d at 244, quoting

17

1-07-1807

625 ILCS 5/7-317(West 2006).

The court then noted that the definition in section 7-317(a) appears in article III of chapter 7 of the Illinois Vehicle Code, "which requires that certain motorists submit proof of financial responsibility for the future as a condition of enjoying driving privileges." Universal Underwriters, 182 Ill. 2d at 244-45. The defendant argued that section 3-317's omnibus clause only applies to liability policies used as proof of future responsibility in accordance with article III of chapter 7.

The supreme court disagreed, stating that the statutory definition of "motor vehicle liability policy" applied to the term as it is " 'used in this Act.' " Universal Underwriters, 182 Ill. 2d at 245. "*The word 'Act,' in turn, refers to the Illinois Vehicle Code, unless the context clearly indicates another meaning.*" (Emphasis added.) Universal Underwriters, 182 Ill. 2d at 245. The court held that "the definition set forth in section 7-317 applies throughout the [Illinois Vehicle] Code and thus applies to the mandatory insurance requirement set forth in section 7-601(a)." Universal Underwriters, 182 Ill. 2d at 245.

The defendant in Universal Underwriters also argued that it was excused from the requirements of section 7-317 under a statutory exemption for " 'vehicles complying with laws which require them to be insured in amounts meeting or exceeding the minimum amounts required under [section 7-601]' " 182 Ill. 2d at 245, quoting 625 ILCS 5/7-601(b)(6) (West 1996). The supreme court stated that the exemption which the defendant referred to applies only when the insurance required by law provides the type of coverage required under the mandatory insurance statute. The court ruled that "the insurance must contain an omnibus clause insuring those driving a vehicle with the owner's permission." Universal Underwriters, 182 Ill. 2d at 245-46. The court

18

stated that the defendant's policy must cover Luckhart's liability as a permissive user regardless of whether the exemption under section 7-601(b)(6) of the Family Responsibility Law applies. Finally, the court stated that, even assuming the defendant was correct in its interpretation of the language in its policy, to give effect to that language would violate Illinois public policy. Universal Underwriters, 182 Ill. 2d at 246.

Pertinent to this case, the defendant in Universal Underwriters also argued that, to the extent its policy covered Luckhart, the policy only provided excess coverage after other insurance covering Luckhart was exhausted. The supreme court stated, "pursuant to custom in the insurance industry, primary liability is generally placed on the insurer of the owner of an automobile rather than on the insurer of the operator." Universal Underwriters, 182 Ill. 2d at 246.

The supreme court in State Farm Mutual Automobile Insurance Co. v. Smith, 197 Ill. 2d 369 (2001) held that an automobile business exclusion violated Section 7-317(b)(2) of the Illinois Vehicle Code and, therefore, Illinois public policy, because it precluded coverage of any person driving the owner's vehicle with the express or implied permission of the owner. The policy exclusion at issue in Smith provided as follows

'THERE IS NO COVERAGE:

1. WHILE ANY VEHICLE INSURED UNDER THIS SECTION IS:

* * *

b. BEING REPAIRED, SERVICED OR USED BY ANY

PERSON EMPLOYED OR ENGAGED IN ANY WAY IN

A CAR BUSINESS.'

197 Ill. 2d at 372-73. The term "car business" was defined as "a business or job where the purpose is to sell, lease, repair, service, transport, store or park land motor vehicles or trailers." Smith, 197 Ill. 2d at 373.

The underlying incident in Smith involved a valet parking service. Maurice Barnes, accompanied by Ruby Smith, drove his vehicle to Harrah's Casino Cruises-Joliet. Barnes gave his vehicle to Harrah's valet service for parking. When Barnes and Smith left the casino, the valet driver employed by Harrah's, Jeremy Fisher, retrieved Barnes' automobile. Smith alleged that, as she entered the passenger door, the vehicle rolled backwards, striking her and knocking her to the ground, causing injury. Fisher and Harrah's tendered their defense to Barnes' insurer, State Farm Mutual Automobile Insurance Company (State Farm). State Farm refused the tender and filed a declaratory judgment action arguing that it had no duty to defend or indemnify Fisher or Harrah's based upon its automobile business exclusion clause, as quoted above.

The circuit court held that the automobile business exclusion applied and that State Farm had no duty to defend or indemnify Fisher or Harrah's. The appellate court held that the automobile business exclusion violated Illinois public policy and, therefore, was unenforceable. The supreme court agreed with the appellate court and explained:

> "Section 7-317(b)(2) is clear. It mandates that a motor
>
> vehicle liability policy, or a liability insurance policy, cover
>
> the named insured and any other person using the vehicle with
>
> the named insured's permission. [Citations.] When a vehicle
>
> owner gives his vehicle to a person engaged in an automobile

business, the owner is also giving that person the express or implied permission to use the vehicle. Therefore, a provision written into an insurance policy that excludes coverage for persons engaged in an automobile business necessarily excludes coverage for persons who are using an insured's vehicle with the insured's express or implied permission. The exclusion thus violates section 7-317(b)(2) of the Illinois Vehicle Code." Smith, 197 Ill. 2d at 374.

The supreme court's holding, however, was limited to only the automobile business exclusion from the policy, stating "[t]he permissibility of other possible policy exclusions is not before us today, and we express no opinion as to any other exclusion." Smith, 197 Ill. 2d at 379.

Following the decision in Smith, the Fourth District addressed whether a business exclusion of liability coverage for a permissive user was void as against public policy. See Pekin Insurance, 357 Ill. App. 3d at 904-05. In Pekin Insurance, a business van owned by Sanfilippo and Sons, Inc. (Sanfilippo) and insured by the defendant, Fidelity and Guaranty Insurance Company (Fidelity) broke down. The driver called for a tow and Brown's Vehicle Inspection (Brown's Towing), a business owned by Larrie Brown, responded with a tow truck insured by the plaintiff, Pekin Insurance Company (Pekin). The tow truck driver hitched the delivery van and proceeded to drive toward Quincy, Illinois. During the trip, the van broke free, crossed into oncoming traffic, and injured the driver and passenger of an oncoming vehicle. The injured driver and passenger sued Larrie Brown, both individually and as Brown's Towing, the tow truck driver, Sanfilippo and the delivery van

21

driver. Pekin brought a declaratory judgment action against Fidelity, seeking a declaration that Fidelity owed a duty to defend Brown's Towing and its driver and that Pekin owed no duty to defend the delivery van owner and its driver. The circuit court granted judgment on the pleadings that Fidelity's policy provided no coverage for Brown's Towing and the tow truck driver and that Pekin breached its duty to defend Sanfilippo and its driver.

The business exclusion provision in Fidelity's policy provided an exclusion from coverage for " '[s]omeone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking[,] or storing "autos" unless that business is yours.' " Pekin Insurance, 357 Ill. App. 3d at 904. The Pekin Insurance court found that the business exclusion applied to Brown's Towing. The Pekin Insurance court compared the Fidelity business exclusion with the relevant insurance provision from Smith and found that the Fidelity exclusion violates public policy. The court stated:

> "The fact that tow trucks are required to carry their own
> insurance [under 625 ILCS 5/12-606(d) (West 2006)] does not mean
> that towed vehicles should be allowed to except tow trucks from their
> coverage. The policy of protecting the public is best served by having
> both the tow truck's policy and the towed vehicle's policy as
> available insurance." Pekin Insurance, 357 Ill. App. 3d at 904.

The court held that, because Fidelity's business exclusion violates public policy as stated in State Farm, the circuit court improperly denied Pekin judgment on the pleadings as to this claim. Pekin Insurance, 357 Ill. App. 3d at 904-05.

22

Pekin also claimed that it owed no duty to defend or indemnify anyone because Brown's Towing and its driver "deselected" their coverage under the Pekin policy and "targeted" the Fidelity policy, which was similar to the claim in John Burns Construction Co. v. Indiana Insurance Co., 189 Ill. 2d 570 (2000). The Pekin Insurance court found that allowing Brown's Towing and its driver to "deselect" their statutory Pekin policy and target the Fidelity policy violates Illinois public policy. The court stated:

> "Insurance is mandatory for tow trucks on public highways in order to protect the public from damage arising from the use of tow trucks. To allow the owner of a policy mandated by this statute [(625 ILCS 5/12-606(d) (West 2006))] to deselect that coverage in favor of the coverage of the vehicle it tows would render the statute and its purpose virtually meaningless." Pekin Insurance, 357 Ill. App. 3d at 902.

The court distinguished the facts of John Burns, where the contractor was named on both policies and both insurers were primary carriers. In Pekin Insurance, Brown's Towing and its driver were not named insureds or additional insureds on the Fidelity policy, but were omnibus insured. 357 Ill. App. 3d at 902-03. The Pekin Insurance court did not specifically refer to section 7-317(b)(2) in this portion of the opinion, but revisited the fact that Fidelity's policy required omnibus coverage under section 7-317(b)(2) when discussing and comparing the holding in Smith. In sum, the Pekin Insurance court considered that insurance policies for tow trucks, which require mandatory insurance under Section 12-606(d) of the Illinois Vehicle Code, also require omnibus coverage pursuant to

23

section 7-317(b)(2).

Another recent supreme court decision, <u>State Farm Mutual Automobile Insurance Co. v. Illinois Farmers Insurance Co.</u>, 226 Ill. 2d 395 (2007), determined whether a "step-down" provision, which reduces the policy limits for permissive users, was violative of Illinois public policy pursuant to section 7-317(b)(2). Unlike <u>Universal Underwriters</u>, <u>Smith</u> and <u>Pekin Insurance</u>, the supreme court did not consider whether the pertinent step-down provision violated section 7-317(b)(2) for precluding coverage to permissive users. Instead, the <u>Illinois Farmers</u> court considered whether a permissive user required an equal amount of coverage as provided to the named insured.

The court in <u>Illinois Farmers</u> reiterated its holding in <u>Universal Underwriters</u> that an omnibus clause "must be read into every liability insurance policy." 226 Ill. 2d at 402. The court also stated that liability insurance required by section 7-601 of the Illinois Vehicle Code must comply with the requirements of section 7-317(b)(2). The court held, however, that nothing in the pertinent statutory language required a liability policy providing the named insured with coverage in excess of the statutory minimum pursuant to section 7-203 of the Illinois Vehicle Code (625 ILCS 5/7-203 (West 2006)) to provide the same level of coverage to permissive users. <u>Illinois Farmers</u>, 226 Ill. 2d at 403-04.

In <u>Progressive Universal Insurance Co. v. Liberty Mutual Fire Insurance Co.</u>, 215 Ill. 2d 121 (2005), Shirley Abbinante owned a vehicle insured under a policy issued by the plaintiff, Progressive Universal Insurance Company (Progressive). Abbinante allowed her son, Ronald, to use the insured vehicle to deliver pizzas for his employer, Casale Pizza, Inc. Ronald was compensated by a flat fee for each pizza he delivered. During one of his deliveries, he struck a pedestrian, who sustained

severe injuries. Progressive's policy contained a " 'food delivery exclusion,' " which precluded coverage for bodily injury or property damage while an insured vehicle was "'being used to carry persons or property for compensation for a fee, including, but not limited to, delivery of *** food, or any other products.'" The supreme court determined whether Progressive had a duty to defend and indemnify Ronald in the underlying action.

The defendant, Liberty Mutual Fire Insurance Company (Liberty Mutual), argued that the food exclusion violated public policy because it conflicted with section 7-317(b)(2). Liberty Mutual contended that, because Ronald was using the vehicle with his mother's express permission at the time he struck the pedestrian, section 7-317(b)(2) required Progressive to defend and indemnify Ronald in the underlying litigation.

Once again, the supreme court reiterated that the omnibus clause as required by statute "must be read into every such policy." Progressive, 215 Ill. 2d at 128. The court noted the principal purpose of this state's mandatory liability insurance requirement is to protect the public by securing payment of their damages. The court further explained Illinois public policy on this issue:

"It is axiomatic that a statute that exists for protection of the public cannot be rewritten through a private limiting agreement. One reason for that rule is that 'the members of the public to be protected are not and, of course, could not be made parties to any such contract.' [Citation.] In accordance with these principals, a statute's requirements cannot be avoided through contractual provisions. Where liability coverage is mandated by the state's financial

25

responsibility law, a provision in an insurance policy that conflicts with the law will be deemed void. The statute will continue to control." Progressive, 215 Ill. 2d at 129.

The supreme court stated that whether a contractual agreement is void as against public policy "ultimately depends on the particular facts and circumstances of each case." Progressive, 215 Ill. 2d at 133. The court distinguished the facts in Smith, in which the business exclusion applied only to permissive users. The exclusion in Smith meant that conduct which would be covered if undertaken by the insured would not be covered if undertaken by someone who was using the vehicle with the insured's permission. In comparison, the food delivery exclusion in Progressive provided that no one was exempt. The food delivery exclusion applied with equal force to the named insured, Shirley Abbinante, and the permissive user, Ronald. The court stated, "[b]ecause the exclusion in Progressive's policy does not differentiate between the insured and those using the vehicle with the insured's permission, there is no possibility, as there was in Smith, that liability insurance coverage afforded the insured would also not be extended to permissive users of the vehicle." Progressive, 215 Ill. 2d at 134. The court held that the "food delivery exclusion" did not conflict with Section 7-317(b)(2) and, therefore, did not violate public policy.

In sum, the above cases show that: (1) section 7-317(b)(2) requiring omnibus coverage applies to the entire Illinois Vehicle Code; and (2) an insurance provision violates section 7-317(b)(2) and, therefore, Illinois public policy, if it provides coverage to the named insured and precludes coverage to an express or implied permissive user.

There is no Illinois authority that has determined whether section 7-317(b)(2) applies to

commercial truck liability coverage under the Commercial Transportation Law. Section 7-317(b)(2) does not include any specific language limiting omnibus coverage to passenger vehicles.

Zurich argues that section 7-317(b)(2) does not apply to the Commercial Transportation Law because Key and Rose were both required to file proof of liability insurance with the I.C.C. in order to operate on public roadways, thereby fulfilling the purpose of this state's mandatory liability insurance requirement to protect the public from damage arising from the use of commercial trucks. Zurich asserts that section 7-601(b)(2) expressly excludes carriers of intrastate or interstate property from the mandatory insurance requirement in section 7-601(a). These statutes provide in pertinent part:

> § 7-601. Required liability insurance policy.
> (a) No person shall operate, register or maintain registration of, and no owner shall permit another person to operate, register or maintain registration of, a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy.
> * **
> (b) The following vehicles are exempt from the requirements of this Section:
> ***
> (2) vehicles required to file proof of liability insurance with the Illinois Commerce Commission. 625 ILCS 5/7-601 (West 2006).

Zurich's argument that Section 7-317(b)(2) does not apply because of the exemption in section 7-601(b)(2) is misplaced. As noted above, the defendant in Universal Underwriters also argued that it was excused from the requirements of section 7-317(b)(2) under a statutory exemption pursuant to section 7-601(b)(6) of the Illinois Vehicle Code, which applies to "other vehicles complying with laws which require them to be insured in amounts meeting or exceeding the

minimum amounts required under [section 7-601]." The court in Universal Underwriters ruled that "the insurance must contain an omnibus clause insuring those driving a vehicle with the owner's permission." Universal Underwriters, 182 Ill. 2d at 245-46. The court stated that the defendant's policy must cover the liability of Luckhart, the test-driver, as a permissive user regardless of whether the exemption under section 7-601(b)(6) applies.

Accordingly, we follow the supreme court's decision in Universal Underwriters and its progeny to require the application of omnibus coverage pursuant to section 7-317(b)(2) to Zurich's Reciprocal Coverage provision. We find that section 7-601(b)(2) does not exempt insurance policies issued for commercial vehicles from the omnibus coverage requirement pursuant to section 7-317(b)(2). Illinois authority and public policy support this finding.

The supreme court's public policy analysis in Illinois Farmers is applicable. The court stated that "[t]he legislature is vested with the power to enact the laws and if the legislation as enacted 'seems to operate in certain cases unjustly or inappropriately, the appeal must be to the General Assembly, and not to the court.' " Illinois Farmers, 226 Ill. 2d at 413-14, quoting People v. Garner, 147 Ill. 2d 467, 475-76 (1992). The court noted new legislation with an effective date of January 1, 2008, which mandates that " 'any policy of private passenger automobile insurance must provide the same limits of *** coverage to all persons insured under that policy, whether or not an insured person is a named insured or permissive user under the policy.' " Illinois Farmers, 226 Ill. 2d at 414, quoting Pub. Act 95-395, eff. January 1, 2008 (now 215 ILCS 5/143.13a (West Supp. 2007)). Finally, the court stated, "when the legislature intends different types of coverage in excess of the minimum statutory requirements mandated by section 7-203 of the Illinois Safety and Family

Financial Responsibility Law to be the same, it chooses plain, unambiguous language to indicate its intent. It has now done so, effective January 1, 2008." Illinois Farmers, 226 Ill. 2d at 414.

In this case, the unambiguous language of section 7-317(b)(2) provides that an owner shall insure "any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured." 625 ILCS 5/7-317 (West 2006). If the legislature intended to limit the mandatory omnibus coverage requirement solely to passenger vehicles, it would have chosen plain, unambiguous language to indicate its intent.

Furthermore, Illinois public policy requiring omnibus coverage for all motor vehicle liability policies is reflected in the Illinois Vehicle Code (625 ILCS 5/100 et seq. (West 2006)). Both Rose and Key were businesses engaged in commercial trucking operations, as governed by the Commercial Transportation Law (625 ILCS 5/18c-1101 et seq. (West 2006)), which is within the Illinois Vehicle Code. The Commercial Transportation Law requires all motor carriers of property to maintain liability insurance (625 ILCS 5/18c-4901 (West 2006)). Although the Commercial Transportation Law provides no specific language requiring omnibus coverage for commercial truckers, the supreme court has interpreted that section 7-317(b)(2) must be read into every liability policy. Illinois Farmers, 226 Ill. 2d at 402.

As a matter of public safety, Illinois public policy warrants mandatory omnibus coverage for commercial truckers that should not be limited by private agreement. See Progressive, 215 Ill. 2d at 129-30 ("[a]n agreement will not be invalidated on public policy grounds unless it is clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless it is manifestly injurious to the public welfare"). If we were to accept

Zurich's argument that section 7-317(b)(2) does not apply to commercial truckers, persons injured by permissive drivers of commercial trucks would be unable to secure payment of their damages, in violation of public policy. See Smith, 197 Ill. 2d at 376 (noting the principal purpose of mandatory automobile liability insurance is to protect the public by securing payment of their damages). Protection of the public is best served by requiring omnibus insurance because the legislature "intended to insure that the common and often unavoidable practice of entrusting one's vehicle to someone else does not foreclose an injured party from obtaining payment for otherwise covered losses resulting from operation of the vehicle." Progressive, 215 Ill. 2d at 137. The supreme court has held that section 7-317(b)(2) applies throughout the Vehicle Code (Progressive, 215 Ill. 2d at 128; Universal Underwriters, 182 Ill. 2d at 245) and there is no statutory language precluding commercial truckers from the omnibus insurance requirement in the statute. Accordingly, we find that section 7-317(b)(2) applies to insurance policies for commercial truckers issued pursuant to section 18c-4901 and, for the purposes of this case, to Zurich's reciprocal coverage provision.

In this case, because Zurich's reciprocal coverage provision precludes omnibus coverage for Key and Washington, the reciprocal coverage provision violates section 7-317(b)(2) and, therefore, Illinois public policy. Smith, 197 Ill. 2d at 372 ("insurance policy provisions that conflict with a statute are void"). Accordingly, we find that the circuit court erred by granting summary judgment in favor of Zurich on this issue.

C. Enforceability of Zurich's Reciprocal Coverage Provision On The Issue Of Ambiguity

Defendants' second ground for arguing that Zurich's reciprocal coverage provision is

unenforceable is based on their contention that the provision is ambiguous. In light of our finding that Zurich's reciprocal coverage provision is violative of section 7-317(b)(2) and, therefore, void (Progressive, 215 Ill. 2d at 129; Smith, 197 Ill. 2d at 372), we need not reach the issue of whether the Reciprocal Coverage provision is ambiguous.

### III. CONCLUSION

In conclusion, the circuit court erred by granting summary judgment in favor of Zurich and against West Bend. As a matter of first impression, we hold that section 7-317(b)(2) of the Illinois Vehicle Code applies to insurance policies issued to commercial truckers. In addition, we find that Zurich's reciprocal coverage provision violated section 7-317(b)(2) and, therefore, is void as against Illinois public policy. This cause is reversed and remanded with directions to reverse summary judgment in favor of Zurich and enter summary judgment in favor of defendants.

Reversed and cause remanded with directions.

THEIS and CUNNINGHAM, JJ., concur.