(No. 107472.—

## ZURICH AMERICAN INSURANCE COMPANY, Appellant, v. KEY CARTAGE, INC., *et al.*, Appellees.

*Opinion filed October 29, 2009.—Rehearing denied January 25, 2010.*

Bruce R. Meckler, Christopher E. Kentra and Sandra J. McMullan, of Meckler Bulger Tilson Marick & Pearson LLP, of Chicago, for appellant.

Thomas F. Lucas, of McKenna Storer, of Chicago, for appellees.

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, and Kilbride concurred in the judgment and opinion.

Justice Garman specially concurred, with opinion, joined by Justice Karmeier.

## OPINION

In this insurance coverage dispute we are asked to determine whether a "reciprocal coverage" provision

found in a commercial trucking insurance policy violates the public policy requiring insurance coverage for permissive users of vehicles set forth in section 7—317(b)(2) of the Illinois Safety and Family Financial Responsibility Law (625 ILCS 5/7—317(b)(2) (West 2006)). For the reasons which follow, we hold that it does not.

## Background

This case has its origins in a lawsuit filed by the estate of Enis Salkic against a commercial truck driver and the driver's employer, Key Cartage, Inc. (Key Cartage). The lawsuit alleged that in October of 2002, the truck driver struck and killed Enis Salkic while Salkic was parked on the shoulder of Interstate 55 near Dwight, Illinois.

The truck involved in the accident was owned by another company, Franklin Truck Group, Inc. (Franklin Truck), and was under a long-term lease to Rose Cartage Services, Inc. (Rose Cartage). Shortly before the accident, Key Cartage (whose owners are related to the owner of Rose Cartage) borrowed the truck from Rose Cartage for use in a new line of business.

Key Cartage and its driver were insured under a policy issued by defendant, West Bend Mutual Insurance, Inc. (West Bend). The truck itself was scheduled on a policy issued by the plaintiff, Zurich American Insurance Company (Zurich), to Rose Cartage. After the underlying lawsuit was filed, a dispute arose between West Bend and Zurich regarding coverage for the accident. West Bend provided a defense to Key Cartage and its driver, but asserted that Zurich had the primary duty to defend because Key Cartage and the driver were permissive users of the truck insured under the Zurich policy. Zurich disagreed and, in February of 2004, filed a complaint for declaratory judgment, seeking a declaration that it owed no coverage for Key Cartage or its driver.

In its complaint, Zurich acknowledged that, as a general matter, the policy issued to Rose Cartage insured permissive users of Rose Cartage's trucks. However, Zurich contended that coverage was precluded in this case based on a "reciprocal coverage" provision in the policy. According to Zurich, in order for Key Cartage and its driver to be insured under Rose Cartage's policy, the reciprocal coverage clause required that Rose Cartage be covered under the West Bend policy. Because the West Bend policy did not cover Rose Cartage, Zurich maintained that it was not obligated to defend Key Cartage and its driver in the underlying lawsuit.

West Bend filed an answer and counterclaim for declaratory judgment. In its counterclaim, West Bend did not dispute that its policy did not provide coverage to Rose Cartage. However, West Bend maintained that Zurich's reciprocal coverage provision violated Illinois public policy requiring the insurer of a vehicle to provide omnibus coverage, *i.e.*, primary insurance to a permissive user of the vehicle. West Bend sought a declaration that Zurich owed a primary duty to defend and indemnify Key Cartage and its driver. The circuit court, after a hearing on the parties' cross-motions for summary judgment, entered judgment in favor of Zurich.

The appellate court reversed and remanded. 386 Ill. App. 3d 1. The appellate court acknowledged that Rose Cartage was a "motor carrier of property" governed by the Illinois Commercial Transportation Law (625 ILCS 5/18c—1101 *et seq.* (West 2006)) and that, while the Commercial Transportation Law requires all motor carriers of property to have liability insurance (625 ILCS 5/18c—4901 (West 2006)), it contains no language requiring omnibus coverage for commercial truckers.

However, the appellate court also noted that section 7—317(b)(2) of the Illinois Safety and Family Financial Responsibility Law (Financial Responsibility Law) (625

ILCS 5/7—317(b)(2) (West 2006)) provides that a motor vehicle liability policy "shall insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured." Relying on *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 182 Ill. 2d 240 (1998), the appellate court concluded that section 7—317(b)(2)'s requirement of omnibus coverage applies to the entire Illinois Vehicle Code, including the Commercial Transportation Law. Accordingly, the appellate court determined that Zurich's policy was required to insure permissive users. Further, because Zurich's reciprocal coverage provision precluded omnibus coverage for Key Cartage and its driver, the appellate court concluded that the provision violated the public policy set forth in section 7—317(b)(2) and, therefore, was void and unenforceable. We granted Zurich's petition for leave to appeal. 210 Ill. 2d R. 315(a).

## Analysis

In addition to contending that Zurich's reciprocal coverage provision is void as against public policy, West Bend also argues, as an alternative contention in support of the appellate court's judgment, that the reciprocal coverage provision is unenforceable because it is ambiguous. Because it is appropriate to first determine what the reciprocal coverage provision means before determining whether it is void as against public policy, we address this contention first.

The Zurich policy issued to Rose Cartage contains a general grant of coverage to permissive users. The policy defines "Who Is An Insured" as follows:

"a. You for any covered 'auto'.

b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow ***."

However, the reciprocal coverage provision provides that the following are not insured:

"a. Any 'trucker' or his or her agents or 'employees', other than you and your 'employees':
\*\*\*
(2) If the 'trucker' is not insured for hired 'autos' under an 'auto' liability insurance form that insures on a primary basis the owners of the 'autos' and their agents and 'employees' while the 'autos' are being used exclusively in the 'truckers' business and pursuant to operating rights granted to the 'trucker' by a public authority."

West Bend does not dispute the general meaning of this provision: the Zurich policy does not provide coverage to other truckers, such as Key Cartage, for the trucker's use of equipment borrowed from the named insured, in this case Rose Cartage, unless the trucker provides primary coverage to the owner and its agent, which in this case is Franklin Truck and Rose Cartage. In arguing that the reciprocal coverage provision is ambiguous, West Bend instead focuses on the phrase "exclusively in the 'truckers' business."

West Bend notes that, at the time of the accident, Key Cartage had only temporarily borrowed the truck from Rose Cartage in order to explore a new line of business and, further, that the truck remained under lease to Rose Cartage and was subject to being returned. Under these facts, West Bend contends that it is reasonable to say that the truck was not being used "exclusively in [Key Cartage's] business." West Bend notes that policy language which is susceptible to more than one reasonable meaning is considered ambiguous and is construed against the insurer. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393 (2005). West Bend reasons, therefore, that as applied in this case, the reciprocal coverage provision should be construed against Zurich. We disagree.

It is undisputed that Rose Cartage had no say in how the borrowed truck was being used by Key Cartage, and that Rose Cartage derived no economic benefit from the truck while it was under Key Cartage's control. In addi-

tion, identification placards required by the Illinois Commerce Commission (see 625 ILCS 5/18c—4701 (West 2006)) and belonging to Key Cartage were displayed on the truck and Key Cartage's name was permanently painted on the door of the truck at the time of the accident. In the plain and ordinary sense of the term, the truck was being used in Key Cartage's business at the time of the accident. And, simply because the truck would at some point have been returned to Rose Cartage, it does not follow that the truck was being used in anything other than Key Cartage's business. We conclude that the reciprocal coverage provision is unambiguous as applied to the facts of this case, that the borrowed truck was being used exclusively in Key Cartage's business as that phrase is used in the Zurich policy and, consequently, that the reciprocal coverage provision works to preclude coverage for Key Cartage and its driver.

Having determined the meaning of the reciprocal coverage provision, we now consider the principal issue raised in this appeal: whether that provision violates the public policy of omnibus coverage required under section 7—317(b)(2) of the Financial Responsibility Law. As noted, the appellate court concluded that it did, based primarily on *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 182 Ill. 2d 240 (1998).

At issue in *Universal* was whether a garage insurance policy issued by Universal Underwriters Group (Universal) to a car dealership was required to provide omnibus coverage to a customer who was test driving one of the dealer's cars. Addressing this issue, this court noted that section 7—601(a) of the Financial Responsibility Law (625 ILCS 5/7—601(a) (West 2006)) imposes a mandatory liability insurance requirement on motor vehicles in Illinois, but does not specify whether an omnibus provision is required. We noted, however, that

section 7—317(b)(2) of the Financial Responsibility Law defines a motor vehicle liability policy as one which "shall insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured." 625 ILCS 5/7—317(b)(2) (West 2006). We then concluded that section 7—317(b)(2) applies to section 7—601, explaining:

"the statutory definition [of a motor vehicle liability policy] appears in article III of chapter 7 of the [Illinois Vehicle] Code, which requires that certain motorists submit proof of financial responsibility for the future as a condition of enjoying driving privileges. See generally 625 ILCS 5/7—301 through 7—329 (West 1996). Universal argues that the section 7—317's omnibus clause requirement only applies to liability policies used as proof of future responsibility in accordance with article III of chapter 7. We disagree. Under section 7—317, the statutory definition of 'motor vehicle liability policy' applies to that term as it is 'used in this Act.' The word 'Act,' in turn, refers to the Illinois Vehicle Code, unless the context clearly indicates another meaning. 625 ILCS 5/1—101.1 (West 1996). Accordingly the definition set forth in section 7—317 applies throughout the Code and thus applies to the mandatory insurance requirement set forth in section 7—601(a)." *Universal*, 182 Ill. 2d at 244-45.

Universal argued that the car dealership was exempt from section 7—601(a) pursuant to section 7—601(b)(6) (625 ILCS 5/7—601(b)(6) (West 1996)) and was instead subject to a mandatory insurance requirement imposed under a portion of the Illinois Vehicle Code that governed the licensing of new vehicle dealers (see 625 ILCS 5/5—101(b)(6) (West 1996)). Thus, according to Universal, the car dealership policy was not subject to the omnibus requirement. We rejected this contention, finding that, "regardless of whether the exemption" in section 7—601(b)(6) applied, the policy was required to have an omnibus provision. *Universal*, 182 Ill. 2d at 246. In other words, it was irrelevant whether the mandatory insur-

ance requirement for car dealerships was viewed as stemming from section 7—601 or section 5—101(b)(6), because the omnibus requirement in section 7—317(b)(2) applied to both statutes.

The appellate court below read *Universal* as requiring that section 7—317(b)(2) be applied to commercial trucking insurance policies mandated by the Commercial Transportation Law. This is too broad a reading of the opinion. *Universal* never discussed commercial trucking insurance policies or considered the interplay between section 7—317(b)(2) and the Commercial Transportation Law. Further, our reasoning in *Universal* expressly rejects an overly broad application of the opinion. As we explained in *Universal*, section 7—317(b)(2)'s omnibus requirement is part of the statutory definition of "motor vehicle liability policy," found in section 7—317. This statutory definition applies to the term "motor vehicle liability policy" as it is "used in this Act." In turn, the word "Act," under the definition provided by the Illinois Vehicle Code (625 ILCS 5/1—101.1 (West 1996)), means the entire Illinois Vehicle Code, *"unless the context clearly indicates another meaning."* (Emphasis added.) *Universal*, 182 Ill. 2d at 245. Thus, in determining whether the word "Act" in section 7—317 refers to other provisions of the Vehicle Code, and, therefore, whether the omnibus requirement of section 7—317(b)(2) applies to those provisions, each case must be judged on its own facts.

From a review of the statutory context at issue in this case, it is apparent that the word "Act," as used in section 7—317, cannot refer to the Commercial Trucking Law. If it did, a conflict would arise between section 7—317(b)(3) of the Financial Responsibility Law and section 18c—4902 of the Commercial Transportation Law (625 ILCS 5/18c—4902 (West 2006)). Section 7—317(b)(3) of the Financial Responsibility Law sets forth specific policy limits that must be adopted for motor vehicle li-

ability insurance policies regulated under section 7—317. If the word "Act" in section 7—317 referred to the Commercial Transportation Law, then this provision would apply to motor vehicle liability policies issued pursuant to that law as well. However, section 18c—4902 of the Commercial Transportation Law expressly provides that the Illinois Commerce Commission "shall prescribe the amounts of insurance" necessary for insurance policies issued to motor carriers of property in the state of Illinois.

Similarly, if the word "Act" as used in section 7—317 referred to the Commercial Transportation Law, a conflict would arise involving section 7—317(g). Section 7—317(g) provides that the Illinois Department of Insurance has final approval of motor vehicle liability insurance policies regulated under section 7—317. If the word "Act" included the Commercial Transportation Law, then this provision also would apply to commercial trucking liability policies. Again, however, section 18c—4902 of the Commercial Transportation Law provides that the Illinois Commerce Commission has the final say in regulating insurance requirements for motor carriers of property in Illinois.

Finally, other irregularities would occur if the word "Act" were read to include the Commercial Transportation Law. For example, section 7—317(l) states that an insurance carrier who has issued a motor vehicle liability policy as defined in section 7—317 shall file a certificate with the Secretary of State, if the insured so requests, showing that such a policy has been issued. However, the Secretary of State plays no role in the regulation of commercial trucking liability policies under the Commercial Transportation Law. See 625 ILCS 5/18c—4902 (West 2006).

West Bend does not contend that the foregoing contradictions and inconsistencies do not exist, but

maintains that any inconsistencies can be resolved under principles of statutory construction. This contention misses the point. In construing legislation we presume that the legislature did not intend absurd, inconvenient, or unjust results. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280 (2003). The existence of the inconsistencies, by themselves, establishes that the legislature could not have intended for the term "Act" in section 7—317 to include the Commercial Transportation Law. Accordingly, we conclude that the definition of motor vehicle liability insurance policies set forth in section 7—317, including the omnibus requirement in section 7—317(b)(2), does not apply to commercial truckers regulated under the Commercial Transportation Law.

In holding that Zurich's reciprocal coverage provision was void as against public policy, the appellate court also expressed concern about public safety, stating:

> "If we were to accept Zurich's argument that section 7—317(b)(2) does not apply to commercial truckers, persons injured by permissive drivers of commercial trucks would be unable to secure payment of their damages, in violation of public policy." 386 Ill. App. 3d at 20.

This concern is unfounded. The reciprocal coverage provision only excludes certain "truckers," specifically, those using a truck at the time of the accident "pursuant to operating rights granted to the 'trucker' by a public authority." Under Illinois law, a trucker only has the right to operate in this state if the appropriate insurance requirements have been met. 625 ILCS 5/18c—4402(b), 18c—4901 (West 2006). Thus, in Illinois, an uninsured trucker is not operating pursuant to rights granted by the state and, therefore, does not fall within the terms of the reciprocal coverage provision. Accordingly, because only those truckers who have their own insurance are excluded under the reciprocal coverage provision, the provision does not present any risk that an innocent victim will be left without recourse.

## Conclusion

For the foregoing reasons, the judgment of the appellate court is reversed. The judgment of the circuit court is affirmed and the cause remanded to that court for further proceedings consistent with this opinion.

*Appellate court judgment reversed;*
*circuit court judgment affirmed;*
*cause remanded.*

JUSTICE GARMAN, specially concurring:

I agree with the majority that the insurance policy at issue is unambiguous and that the reciprocal coverage provision works to preclude coverage for Key Cartage. I further agree that the reciprocal coverage provision does not violate the public policy of the State of Illinois. However, because I consider it unnecessary to reexamine whether the word "Act" as used in section 7—317 applies to the entire Vehicle Code, I must specially concur.

The majority opinion relies on distinguishing *Universal Underwriters* by determining that although the word "Act" applies to the entire Vehicle Code, it does not apply to the Commercial Transportation Law. The majority concludes "Act" cannot apply to that law because it would create inconsistencies that arise to absurd, inconvenient or unjust results. 236 Ill. 2d at 127. I consider it unnecessary to address this question, because even if we were to assume that the word "Act" applies throughout the Vehicle Code, including the Commercial Transportation Law, this does not change the result in this case.

Given the definition of "motor vehicle liability policy" as set forth in section 7—317, and the mandate contained in section 7—601 of the Safety and Family Financial Responsibility Law, *all* operators of a motor vehicle generally are required to carry a "liability insurance

policy,"[1] which under section 7—317 must include an omnibus clause, unless the operator falls under any of the listed exemptions in section 7—601. However, even if an operator or vehicle qualifies for an exemption under section 7—601, it may nonetheless be required by some other statute to carry a "motor vehicle liability policy" or "liability insurance policy."

Based on the record, it is evident that the vehicle insured by Zurich falls under the exemption in section 7—601(b)(2). Under the plain language of section 7—601(b)(2), "vehicles required to file proof of liability insurance with the Illinois Commerce Commission" are exempt from being covered under a motor vehicle liability policy. There is no dispute that the vehicle involved in this accident, as it was used in commercial trucking, was required to file proof of liability insurance with the Illinois Commerce Commission. The Safety and Family Financial Responsibility Law therefore cannot be the source of an omnibus clause requirement. Thus, the vehicle's insurance policy need only contain an omnibus clause if another statute within the Vehicle Code requires commercial truckers and their vehicles to be covered by a motor vehicle liability policy.

The statute applicable to commercial truckers, which is the source of the requirement that commercial trucks file proof of insurance with the Illinois Commerce Commission, is the Commercial Transportation Law. Through the Commission's rules, this statute heavily regulates

---

[1]Although this is not the exact phrase used in section 7—317, "liability insurance policy" and "motor vehicle liability policy" appear to have been used interchangeably, and we have interpreted the terms as synonymous. *Universal Underwriters*, 182 Ill. 2d at 244 (using the phrase "liability insurance policy" after referencing the definition of "motor vehicle liability policy"). The phrase "liability insurance policy" is also used within the Safety and Family Financial Responsibility Law's provision mandating insurance coverage.

the trucking industry within Illinois. Regarding insurance coverage, the Commercial Transportation Law requires that before a trucking registration may be issued, the carrier must have complied with Illinois Commerce Commission regulations regarding proof of insurance. 625 ILCS 5/18c—4402 (West 2006). The Commission regulations on insurance have adopted the federal regulations governing interstate motor carriers of property. 92 Ill. Adm. Code §1425.30. Setting aside the question whether it would be appropriate to assign our legislature's definitions of "motor vehicle liability policy" or "liability insurance" to the agency responsible for adopting the federal regulations, the regulations lack any reference to those phrases. There is, therefore, no requirement anywhere within the Commercial Transportation Law or the Commission's regulations that requires commercial truckers to be covered under a "motor vehicle liability policy" or a "liability insurance policy," and, consequently, no requirement that insurance policies issued to commercial truckers must contain an omnibus clause. Simply put, the critical term at issue, defined in section 7—317, is not "used in this Act" with respect to the Commercial Transportation Law.

This conclusion accords with common sense. As the majority opinion notes, the Commercial Transportation Law gives final approval of insurance policies to the Illinois Commerce Commission. 236 Ill. 2d at 126. Section 7—601(b)(2), which, as noted above, exempts vehicles required to file proof of insurance with the Commission, is a further indication that the legislature intended the Commission to be the sole regulator of commercial trucking insurance requirements.

This case is readily distinguishable from *Universal Underwriters*. As the majority notes, at issue in that case was a garage insurance policy issued to a car dealership. A person test-driving one of the dealership's vehicles col-

lided with another vehicle, injuring its driver. *Universal Underwriters*, 182 Ill. 2d at 241. In defending the case, the dealership and its insurer, Universal Underwriters, made an argument similar to what Zurich raises here. The insurance company argued that the policy covering the dealership's vehicles did not need to be covered by a policy that included an omnibus clause because it fell under section 7—601(b)(6). That provision exempted other " 'vehicles complying with laws which require them to be insured in amounts meeting or exceeding the minimum amounts required under [this Section].' " *Universal Underwriters*, 182 Ill. 2d at 245, quoting 625 ILCS 5/7—601(b)(6) (West 2006).

The dealership claimed that section 7—601(b)(6) applied because, as a dealership, it was subject to regulation under article I of chapter 5 of the Vehicle Code. 625 ILCS 5/5—101(b)(6) (West 1996). That provision requires dealerships to have minimum insurance coverage greater than the minimum coverage required by section 7—601.

We disagreed with the insurance company, holding that the policy was indeed required to have an omnibus clause. Under section 5—101(b)(6), dealerships are required in general to carry a "liability insurance policy" that includes such minimum coverage. Thus, although the dealership was not required to have an omnibus clause in its policies under section 7—601, because section 5—101(b)(6) nonetheless required it to have a "liability insurance policy," that policy must necessarily fit section 7—317's definition of "liability insurance policy" and include an omnibus clause. As the majority notes, we stated in *Universal Underwriters* that regardless of whether the exemption in section 7—601(b)(6) applied, the policy was required to have an omnibus clause.

As discussed above, the Commercial Transportation Law imposes no such requirements on vehicles required to file proof of insurance with the Commission. Thus,

unlike in *Universal Underwriters*, in this case the question whether an exemption applies is relevant to determining the result. The vehicle insured by Zurich, having qualified for the exemption listed in section 7—601(b)(2), is not required by any other statute to be covered by a "motor vehicle liability" and therefore need not be covered by an insurance policy which includes an omnibus clause. For that reason, the reciprocal clause contained in Zurich's policy, which contains an exception to its permissive user provisions, does not violate the public policy of Illinois.

In summary, I do not find it necessary to reexamine whether the word "Act" in section 7—317 applies to the entire Vehicle Code, as we did in *Universal Underwriters*. However, although I disagree with the majority's analysis, I concur in the judgment that the lack of an omnibus clause in Zurich's insurance policy does not violate the public policy of Illinois.

JUSTICE KARMEIER joins in this special concurrence.