In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2443

COCA-COLA ENTERPRISES, INC., and
ACE AMERICAN INSURANCE COMPANY,

*Plaintiffs-Appellants,*

*v.*

ATS ENTERPRISES, INC.,
d/b/a S&S SERVICE CO.,
DANIEL ZACHA, and UNIVERSAL
UNDERWRITERS INSURANCE COMPANY,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 08-2119—**Harold A. Baker**, *Judge.*

ARGUED DECEMBER 7, 2010—DECIDED FEBRUARY 22, 2012

Before RIPPLE, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* S&S Service Company performed occasional maintenance and repair service on a fleet of Coca-Cola delivery trucks regularly kept at the soft-

drink company's bottling plant in central Illinois. S&S would usually provide this service onsite at the Coca-Cola plant, but sometimes it would take the trucks to its shop to perform the repairs. In November 2007 Daniel Zacha, an employee of S&S, caused a fatal traffic accident while driving a Coca-Cola tractor-trailer to S&S's repair shop for service. The dispute here concerns which company's insurer—Coca-Cola's or S&S's—is ultimately responsible for the amount paid to settle the claims of the decedent's estate. The district court concluded that under Illinois law only Coca-Cola's insurance policy provided coverage for the accident and entered summary judgment in favor of S&S and its insurer.

We affirm, although on slightly modified grounds. Contrary to the district court's conclusion, both insurance policies provide coverage: S&S's policy applies by its plain language, while Coca-Cola's policy applies by operation of Illinois public policy. Still, we agree that Coca-Cola and its insurer are ultimately responsible for the settlement amount. Under Illinois law the vehicle owner's policy is primary over the vehicle operator's policy unless a statute provides otherwise. Coca-Cola argues that the Illinois tow-truck insurance statute supplies the necessary exception. We disagree; the accident did not involve a tow truck or other vehicle owned by S&S.

## I. Background

Coca-Cola Enterprises, Inc., operates a soft-drink bottling plant in Mattoon, Illinois, a small city located about

45 miles south of Champaign. S&S, a local towing-and-repair company, performed maintenance and repair work on Coca-Cola's fleet of delivery vehicles on an order-by-order basis. S&S's employees usually performed this service work at Coca-Cola's plant, but sometimes they serviced the trucks at S&S's shop.

On November 9, 2007, Zacha, an S&S employee, was performing routine maintenance on one of Coca-Cola's tractor-trailers at the Mattoon plant. With Coca-Cola's permission, Zacha drove the tractor-trailer from the bottling plant to S&S's shop to complete the repairs. The vehicle never reached its destination. On the way to S&S, Zacha negligently made a left turn across oncoming traffic, causing a head-on collision with a minivan. The driver of the minivan suffered serious injuries and died shortly thereafter.

Coca-Cola's tractor-trailer was insured under a policy from ACE American Insurance Company ("ACE").[1] S&S and Zacha, acting within the scope of his employment, were insured under a policy from Universal Underwriters Insurance Company ("Universal").[2] The decedent's estate sent an initial settlement demand to Universal. S&S and Universal tendered the claim to Coca-Cola and ACE, but they declined the tender. The insurers then made reciprocal demands to defend and indemnify their

[1] The ACE policy has a $5 million deductible, meaning that Coca-Cola effectively self-insured up to that amount.

[2] The Universal policy had a $300,000 per-occurrence policy limit but also provided $2 million in umbrella liability coverage.

respective insureds, and Universal eventually agreed to take the lead in negotiations with the decedent's estate. The estate later filed a wrongful-death action in Illinois state court. Universal settled the estate's claims for $1.9 million, which was within Universal's policy limits.

Meanwhile, Coca-Cola and ACE filed this diversity action against S&S, Zacha, and Universal, seeking a declaratory judgment regarding the parties' obligations with respect to the estate's claims. The defendants answered and counterclaimed for reimbursement of the settlement amount, claiming that Coca-Cola and ACE were solely responsible for payment.[3] Both sides moved for summary judgment. The district court entered two key holdings: (1) under Illinois law Coca-Cola's policy with ACE is primary over S&S's policy with Universal unless a statutory exception exists; and (2) the Illinois tow-truck statute does not provide an exception because the accident did not involve an S&S tow truck. The court then concluded that the Universal policy did not apply, and Coca-Cola and ACE were responsible for the entire settlement amount. Accordingly, the court entered summary judgment for S&S, and Coca-Cola appealed.

## II. Discussion

We review the district court's grant of summary judgment de novo, construing all facts and reasonable infer-

---

[3] Unless the context requires otherwise, we refer to plaintiffs Coca-Cola and ACE collectively as "Coca-Cola," and to defendants S&S, Zacha, and Universal collectively as "S&S."

ences in the light most favorable to the nonmoving party. *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Here, the material facts are undisputed, leaving only a legal issue: Under Illinois insurance law, which insurer is responsible for paying the settlement amount? Is it ACE, under the policy insuring Coca-Cola as the owner of the vehicle involved in the accident; or Universal, under the policy insuring S&S, whose employee, Zacha, was operating the vehicle in the course of S&S's business?

A threshold question is whether either or both policies provide coverage for this accident. There is no dispute that the ACE policy does. That policy covers permissive drivers of Coca-Cola's vehicles, although it purports to exclude "[s]omeone using a covered 'auto' while he or she is working in a business of . . . servicing [or] repairing . . . 'autos.'" Under Illinois law, however, all vehicle-owner insurance policies must cover any "person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured." 625 ILL. COMP. STAT. 5/7-317(b)(2). Another statute requires all motor vehicle owners to carry a minimum level of insurance. *See id.* 5/7-601(a). This set of statutory requirements is generally referred to as "omnibus" coverage. *See Zurich Am. Ins. Co. v. Key Cartage, Inc.*, 923 N.E.2d 710, 711 (Ill. 2009). Where the omnibus requirements apply, the "[permissive user] clause must be read into every such policy." *State Farm Mut. Auto.*

*Ins. Co. v. Universal Underwriters Grp.*, 695 N.E.2d 848, 850 (Ill. 1998). Zacha's use of the Coca-Cola tractor-trailer was permissive, so Illinois law mandates coverage under the ACE policy notwithstanding its exclusionary language.

Whether the Universal policy applies is a slightly more difficult matter. The Universal policy provides in relevant part: "WE will pay . . . all sums the INSURED legally must pay as DAMAGES . . . because of INJURY to which this insurance applies, caused by an OCCURRENCE arising out of the . . . use . . . of an OWNED AUTO . . . ." The question here is whether the Coca-Cola tractor-trailer, obviously not owned by S&S, is nonetheless considered an "owned auto" under the policy. As it turns out, the policy defines the term rather broadly; "owned auto" specifically includes "an auto not owned by you . . . when used in your business." The phrase "when used in your business" is not further defined, but the particular circumstances here—in which an S&S employee was operating a nonowned vehicle in the course of his employment for the purpose of transporting it to S&S's shop for repairs—surely qualifies. *See* 8A LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 120:3 (3d ed. 1995) ("The concept of a business use is not given a rigid construction . . . ."). Zacha's accident thus triggered coverage under the Universal policy.

The district court held, however, that the Universal policy did not apply because Illinois law does not *require* the Universal policy to cover an accident not involving the towing company's tow truck. This appears to be a

correct reading of Illinois law (more on this later), but the point is not dispositive. Illinois follows the norm that the plain language of an insurance policy will be enforced unless it violates public policy. *See, e.g.*, *Hobbs v. Hartford Ins. Co.*, 823 N.E.2d 561, 564 (Ill. 2005). Here, as we have noted, the language of the Universal policy itself provides coverage. In the case of the ACE policy, we ignored policy language purporting to *exclude* coverage because it was inconsistent with Illinois public policy as expressed in the omnibus insurance statute. Here, however, the operative language in the Universal policy is a *grant* of coverage—not an *exclusion*—and no one argues that providing coverage in this situation would be against Illinois public policy. (That would be a hard argument to make.) That Illinois law doesn't affirmatively *require* coverage under these circumstances doesn't mean that we ignore the express policy language; to the contrary, on the face of it, the Universal policy applies.

But which policy is primary? The rule in Illinois is that "primary liability is generally placed on the insurer of the owner of an automobile rather than on the insurer of the operator." *State Farm*, 695 N.E.2d at 851. In *State Farm* a driver negligently caused an accident while test-driving an automobile dealership's vehicle. *Id.* at 849. The issue was whether the dealership's policy covering the car was primary over the driver's general-liability insurance. *Id.* The Illinois Supreme Court held that despite language in the dealership's policy to the contrary, the mandate in the omnibus statute made the dealership's policy primary over the driver's operator's

insurance unless "statutory language qualif[ied] that mandate." *Id.* at 851.[4]

Invoking the exception mentioned in *State Farm*, Coca-Cola points to an Illinois statute requiring tow-truck companies like S&S to carry specified levels of insurance:

> (d) Every tow-truck operator shall in addition file an indemnity bond, insurance policy, or other proof of insurance in a form to be prescribed by the Secretary for: garagekeepers liability insurance, in an amount no less than a combined single limit of $500,000, and *truck (auto) liability insurance* in an amount no less than a combined single limit of $500,000, on hook coverage or garagekeepers coverage in an amount of no less than $25,000 which shall indemnify or insure the tow-truck operator for the following:
>
> > (1) *Bodily injury or damage to the property of others.*
> >
> > (2) Damage to any vehicle towed by the tower.
> >
> > (3) In case of theft, loss of, or damage to any vehicle stored, garagekeepers legal liability coverage in an amount of no less than $25,000.
> >
> > (4) In case of injury to or occupational illness of the tow truck driver or helper, workers com-

---

[4] Illinois courts have construed the holding in *State Farm* to "necessarily exclude[] a finding that the [operator's] insurance might also be coprimary." *Browning v. Plumlee*, 737 N.E.2d 320, 323 (Ill. App. Ct. 2000).

> pensation insurance meeting the minimum re-
> quirements of the Workers' Compensation Act.

625 ILL. COMP. STAT. 5/12-606(d) (emphasis added). Coca-
Cola argues that under this statute the Universal policy
must cover S&S against injuries arising out of *any*
vehicle accident occurring in the course of S&S's towing-
and-repair business. In other words, because the insur-
ance specified in section 12-606(d) is mandatory, it
trumps Coca-Cola's omnibus owner's policy, effectively
reversing the priority of the policies. Although the
ACE policy—the owner's policy—is primary under the
omnibus statute, the tow-truck statute amounts to an
exception under *State Farm*, making the Universal policy
primary.

This argument is hard to square with the language of
the relevant statutes. Section 12-606(d) requires tow-
truck operators to carry three types of liability insurance
at specified minimum levels: (1) "garagekeepers
liability insurance"; (2) "truck (auto) liability insurance";
and (3) "on hook coverage or garagekeepers coverage." *Id.*
Coca-Cola relies solely on the statute's "truck (auto)
liability" provision,[5] arguing that this subsection must

---

[5] We note that Coca-Cola did not develop an argument based
on the mandatory garagekeepers liability insurance. "Typically,
garage liability policies provide coverage for property left 'in
charge' of the insured." 9A LEE R. RUSS & THOMAS F. SEGALLA,
COUCH ON INSURANCE § 132:61 (3d ed. 1995). These policies are
generally issued to "service stations, repair shops, . . . and
(continued...)

be construed to mandate coverage for *any* auto accident occurring in the course of the tow-truck operator's business *regardless* of whether the accident involves a tow truck or other auto owned by the insured.

This is an implausible reading of the statutory scheme. The coverage required by subsection (d)(1) of the statute explicitly refers to "truck (auto) liability insurance," plainly requiring tow-truck operators to insure their own trucks and other vehicles at the specified levels. Construing this provision to mandate coverage for accidents involving vehicles owned *by others* expands the statute beyond its terms. *See Sylvester v. Indus. Comm'n*, 756 N.E.2d 822, 827 (Ill. 2001) (avoiding an interpretation that renders a statutory term meaningless). Our interpretation of the tow-struck statute is reinforced by the terms of the omnibus statute, which exempts a specified subset of *vehicles*—not *drivers*—from its basic requirements. As relevant here, vehicles subject to the requirements of the tow-truck statute are exempt from the omnibus statute. *See* 625 ILL. COMP. STAT. 5/7-601(b)(1) (exempting "vehicles subject to the provisions

---

(...continued)

businesses involving a combination of these kinds of operations." 20 ERIC MILLS HOLMES, HOLMES' APPLEMAN ON INSURANCE 2D § 131.2 (2002). Accordingly, it might have been argued that when Zacha took possession of the Coca-Cola vehicle, the garagekeepers-liability portion of the statute kicked in. But again, this argument was not developed; at oral argument Coca-Cola's counsel explicitly disclaimed any reliance on that portion of the statute.

of . . . Section[] 12-606," which includes the tow-truck statute). This means only that tow-truck operators are required to insure their trucks and other vehicles at the higher minimum levels specified in the tow-truck statute, *not* that they must insure their employees against liability for accidents that occur while driving nonowned vehicles.

Coca-Cola cites *Pekin Insurance Co. v. Fidelity & Guaranty Insurance Co.*, 830 N.E.2d 10 (Ill. App. Ct. 2005), but that case does not help its argument. In *Pekin* a tow-truck operator was towing a van when the van broke free and injured passengers in an oncoming vehicle. 830 N.E.2d at 12. The Illinois appellate court concluded that the tow-truck statute displaced the omnibus statute, making the tow-truck-operator policy primary and the van owner's policy secondary. *Id.* at 18. *Pekin* is distinguishable. There, as the court specifically noted, the accident occurred during a tow, and it was undisputed that subsection (d)(2) of the tow-truck statute applied. *See id.* ("[A]llowing [the tow-truck operator policy] to become secondary coverage *for its tow of the delivery van* violates the public policy reflected in [the tow-truck statute]." (emphasis added)). Here, in contrast, the accident did not involve a tow truck or any other S&S vehicle; subsection (d)(1), requiring tow-truck operators to maintain higher levels of coverage for their own trucks and other vehicles, does not displace Coca-Cola's owner's policy.

Accordingly, Coca-Cola's policy with ACE remains primary pursuant to the Illinois omnibus statute and

the rule in *State Farm*.[6] The district court properly entered summary judgment in favor of defendants S&S, Zacha, and Universal.

AFFIRMED.

---

[6] Because we have affirmed the judgment in favor of S&S and Universal, we need not address their alternative argument under the "target tender" doctrine. We note, however, that this rule is likely inapplicable here. "The target tender rule provides an insured covered by multiple concurrent policies with the paramount right to choose which insurer will defend and indemnify it with respect to a specific claim." *Chi. Hosp. Risk Pooling Program v. Ill. State Med. Inter-Ins. Exch.,* 925 N.E.2d 1216, 1233 (Ill. App. Ct. 2010). S&S argues that because it tendered the case to ACE, ACE may not seek contribution from Universal. *See id.* But the target-tender rule generally does not apply where, as here, an operator is insured only by virtue of omnibus coverage. *See Pekin Ins. Co. v. Fid. & Guar. Ins. Co.*, 830 N.E.2d 10, 19 (Ill. App. Ct. 2005) ("[The] towing business and its driver were not named as insureds or additional insureds on the delivery van owner's Fidelity policy but were omnibus insured. Their status in relation to Fidelity was not a specific part of a contract between [the] towing business and the delivery van's owner.").