In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-3399

RUTH N. ANDREWS,

*Plaintiff-Appellant,*

*v.*

CBOCS WEST, INC., and J.J. STEWART,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 09-CV-1025-WDS — **William D. Stiehl**, *Judge.*

ARGUED APRIL 18, 2013 — DECIDED FEBRUARY 14, 2014

Before BAUER, FLAUM, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Ruth Andrews, a former server at a Cracker Barrel restaurant in Caseyville, Illinois, alleges that the restaurant's manager fired her based on her race and age and also in retaliation for a past complaint about discrimination. Andrews, who is white, was in her mid-fifties at the time of the events in question; her former manager, Tremayne "J.J."

Stewart, is black. Andrews brought claims against Cracker Barrel under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), and 42 U.S.C. § 1981.[1] The district court entered summary judgment for Cracker Barrel, and Andrews appealed.

We affirm. The undisputed facts show that Andrews wasn't fired; she quit her job at the Caseyville restaurant in anticipation of a transfer to a different Cracker Barrel restaurant that never materialized. Without evidence of an adverse employment action, none of her claims can succeed. The district court properly entered summary judgment for Cracker Barrel.

## I. Background

We recount the following facts from the summary-judgment record, construing the evidence in the light most favorable to Andrews and drawing reasonable inferences in her favor. *See Coca-Cola Enters., Inc. v. ATS Enters., Inc.*, 670 F.3d 771, 774 (7th Cir. 2012). Andrews was a server at a Cracker Barrel restaurant in Caseyville, Illinois, from 1999 until December 21, 2007. In 2002 she filed a discrimination claim against Cracker Barrel, which was settled in 2003. As that case neared conclusion, "J.J." Stewart—then an associate manager

---

[1] Technically, she sued CBOCS West, Inc., which owns and operates Cracker Barrel restaurants in the region. For simplicity we refer to the defendant as "Cracker Barrel." Andrews also sued Stewart, whom she identifies in the caption as "J.J. Stewart," but she never served him. The district court dismissed the claims against Stewart, and Andrews does not challenge that decision.

at the restaurant—told Andrews that she had better "hope to God I never become GM because if I do, one of the first things I'm going to do is fire you." This was apparently meant as a comment about the amount of money that Andrews's lawsuit had cost the company.

Stewart was indeed elevated to general manager in 2006. Soon after, he said he was going to make the Caseyville restaurant the first all-black Cracker Barrel. He assigned more tables to black servers than to white servers. In Andrews's view Stewart hired a disproportionately high percentage of black people when compared to the demographics of the local population.

Stewart made daily comments about Andrews's age, calling her "old woman," "old lady," and "grandma." He sometimes would grab a cane and impersonate an elderly woman when approaching Andrews. On a few occasions, Andrews complained that Stewart was unfairly reassigning large tables of male customers from older servers to younger ones; Stewart responded, "those guys don't want to look at an old woman like you." Once a customer left a tip for the "little old lady," and Stewart gave it to Andrews, reasoning that she was "the only little old lady here." For a period of time, Stewart also encouraged Andrews to stop working and instead watch her grandchildren.

Andrews repeatedly asked Stewart to stop, but he didn't. She mentioned the problem to the associate manager, but he told her that there was nothing he could do. Andrews attempted to complain to the district manager, but the person responsible for scheduling an appointment for Andrews never

did so. In July 2007 Andrews complained to a Cracker Barrel Employee Relations Specialist, who said she'd investigate and told Andrews to make notes of the goings-on at the Caseyville restaurant. Andrews was already doing so, keeping copious daily records of perceived slights from her coworkers, deviations from protocol, and instances in which she believed that Stewart was harassing her. Andrews submitted her notes to the specialist in July, September, and October of 2007, but received no response. She re-sent the notes in November 2007, and this time the specialist commenced an investigation and determined that no further action needed to be taken. At the specialist's request, however, the district manager visited Caseyville to discuss some operational concerns raised by Andrews's notes.

Meanwhile, the friction between Andrews and Stewart continued. Stewart began to encourage Andrews to transfer to a different Cracker Barrel restaurant. On one occasion he asked Andrews whether there was anything he could do to get her to transfer. He sarcastically said that he'd help her pack her things and drive her to the Cracker Barrel in Mt. Vernon, Illinois—every day if necessary. Mt. Vernon is about 70 miles from Caseyville.

In November 2007 Andrews told Stewart that she had "come to agree with" him that she needed to "go ahead and transfer." She asked him to initiate the transfer process to the Mt. Vernon restaurant. He agreed to get on it right away. Andrews said she'd like to take her three weeks of paid vacation to cover the transition, commencing on December 22, 2007.

Stewart approved the vacation request. On December 10, 2007, Andrews told Stewart that she could start at the Mt. Vernon restaurant on or after January 6, 2008, but the only shift available was "closing hours on Friday and Saturday." Andrews didn't want those hours and didn't accept them; she maintains that Stewart was only teasing her because he knew she avoided driving at night. Stewart then announced that Andrews's last day at the Caseyville restaurant would be December 21. At this, he and the other employees applauded and cheered.

Andrews worked through December 21 at the Caseyville restaurant and received her vacation pay before leaving. She claims that Stewart told her the transfer had gone through, but he denies ever saying that. It's undisputed that Andrews never actually applied to work at the Mt. Vernon Cracker Barrel, never contacted anyone in management at that restaurant, and was never offered a start date or shift of hours there. Her paid vacation expired on January 12, 2008. Andrews spoke with Stewart on January 5 asking about hours at the Mt. Vernon restaurant. She said that if there were no hours available at Mt. Vernon, then she would need to be put back on the schedule at Caseyville. Stewart told her that the general manager of the Mt. Vernon restaurant would let him know if there were hours available for her there. He said he'd call her back if he received any information. That call never came. On January 11 Stewart was fired by the district manager for violating Cracker Barrel's asset-protection policy. Stewart denies that the January 5 conversation took place.

Andrews thereafter called the Mt. Vernon restaurant but never spoke with anyone in management, never left a message, and never put her transfer request in writing. She never returned to work at the Caseyville restaurant either. Cracker Barrel's computer program for personnel matters automatically tracks the employment status of the restaurant's employees; if an employee hasn't worked for more than three consecutive weeks, the program changes the absent employee's status to "terminated." On January 24, 2008, Andrews received a check in the mail from Cracker Barrel "representing any vacation pay due upon separation from Cracker Barrel, in accordance with state law regarding compensation owed at termination of employment." The check was cut on January 22 and had a "week ending date" of January 18, 2008, four weeks after her last day at Caseyville. The system listed Andrews as having quit with notice, with a termination date of December 21, 2007, her last day of work. It also listed her as eligible to be rehired.

Andrews "assume[d]" that she had been fired and didn't contact the Caseyville restaurant, the Mt. Vernon restaurant, or Cracker Barrel headquarters to inquire about her employment status. In March 2008 she filed a discrimination charge with the EEOC alleging that Stewart fired her because of her sex, age, and race; she also alleged that he had retaliated against her for her prior Title VII suit. After receiving a right-to-sue letter, she filed this suit alleging racial discrimination in violation of Title VII, 42 U.S.C. § 2000e-3, and 42 U.S.C. § 1981; age discrimination in violation of the ADEA, 29 U.S.C. § 623; and retaliation in violation of Title VII and the ADEA. The district court

granted Cracker Barrel's motion for summary judgment on all claims. Andrews appealed.

## II. Discussion

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Coca-Cola Enters.*, 670 F.3d at 774. Because Andrews bears the ultimate burden of persuasion, Cracker Barrel's summary-judgment burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [Andrews's] case." *Celotex*, 477 U.S. at 325. We review a decision granting summary judgment de novo. *Coca-Cola Enters.*, 670 F.3d at 774.

"A plaintiff may prove employment discrimination under the ADEA, Title VII, and § 1981[] using either the 'direct method' or 'indirect method.' " *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060–61 (7th Cir. 2003) (citing *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727–28 (7th Cir. 1998)). Under the direct method of proof, the plaintiff makes her case by pointing to evidence directly showing that her employer subjected her to an adverse employment action on an impermissible discriminatory basis—here, on the basis of race and age. *See id.* at 1061 (citing *Cianci*, 152 F.3d at 727). Under the indirect method of proof, the plaintiff has the initial burden of establishing

> a prima facie case that (1) she is a member of a
> protected class, (2) she performed reasonably on

the job in accord with her employers' legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer.

*Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). If the plaintiff satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual. *Id.* Retaliation claims may also proceed under direct and indirect methods of proof; rather than proving that she was a member of a protected class, the plaintiff must prove that she engaged in a statutorily protected activity. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 784–85 (7th Cir. 2007).

Andrews's case fails at the threshold. An element common to all of her claims, and to both methods of proof, is that she must have suffered a materially adverse employment action.[2] *See id.* at 779 (holding that plaintiffs asserting employment-discrimination claims must show that they suffered a materially adverse employment action regardless of whether they

---

[2] Title VII retaliation claims can be premised upon any materially adverse action taken against the employee, regardless of whether it affects the employee's terms or conditions of employment. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006). But all of Andrews's claims are premised on her contention that she was fired, which if true obviously qualifies as an adverse employment action.

proceed under the direct or indirect method of proof). Termination of employment is obviously " 'a significant change in employment status' " and thus a materially adverse employment action. *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007) (quoting *Bell v. EPA*, 232 F.3d 546, 555 (7th Cir. 2000)). Cracker Barrel submits, however, that Andrews wasn't fired, but in fact voluntarily left her job at the Caseyville restaurant. She may have done so in anticipation of a new job at the Mt. Vernon restaurant, but the automatic "termination" of her employment was attributable to her failure to show up for work for more than three weeks.

The legal premise of Cracker Barrel's argument is manifestly sound: In the absence of circumstances suggesting a constructive discharge, an employee who voluntarily resigns cannot be said to have experienced an adverse employment action.[3] *Cf. Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 717 (8th Cir. 2003) (noting that "a plaintiff cannot state an adverse employment action if he voluntarily resigned" unless the circumstances rise to the level of a constructive discharge). Andrews has not invoked the constructive-discharge doctrine. Her counsel confirmed at oral argument that this omission was intentional. Andrews contends that Stewart fired her, not that

---

[3] "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004) (citing 1 B. LINDEMANN & P. GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 838–39 (3d ed. 1996)). The relevant inquiry is whether the employee's working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign. *See id.*

she was constructively discharged. We thus have no occasion to consider how the constructive-discharge doctrine might apply to Andrews's case.

Accordingly, to overcome Cracker Barrel's motion for summary judgment, Andrews needed to show that there was a genuine dispute of fact about whether she voluntarily terminated her employment or was fired. If Andrews left Cracker Barrel on her own accord, then she did not suffer an adverse employment action and summary judgment was proper on all claims.

Our review of the record reveals that Andrews affirmatively admitted the following facts:

- She wanted to transfer to the Mt. Vernon Cracker Barrel and asked Stewart to initiate the transfer process, but she never formally applied for a transfer or applied to work at the Mt. Vernon restaurant.

- Stewart told her that the only hours available at Mt.Vernon were the Friday and Saturday closing shifts. She told him that she did not want those hours.

- She was never offered a shift or a start date at Mt.Vernon. She never spoke with anyone in management at the Mt. Vernon restaurant or left a message for someone to call her back.

- Her last day of work at the Caseyville Cracker Barrel was December 21, 2007, and by December 10 everyone at Caseyville knew that she would be leaving the restaurant at the end of her shift that day.

- She asked Stewart for three weeks of paid vacation to cover her "transition" to Mt. Vernon. Stewart approved the request.

- She began her three weeks of paid vacation on December 22, the day after her last day of work at the Caseyville Cracker Barrel.

- After her January 5, 2008 conversation with Stewart, she never again contacted anyone at the Caseyville restaurant.

In addition to the foregoing admitted facts, Andrews has not submitted any evidence to contradict the following facts:

- The Cracker Barrel computer system automatically changes the employment status of employees who do not show up for work for a period of three weeks, listing them as "terminated."

- After December 21, 2007, she never returned to work at the Caseyville Cracker Barrel and never asked for clarification of her employment status.

- No one ever told her that she could not return to work at Cracker Barrel.

- The Cracker Barrel computer system listed her as having quit but eligible for rehire.

- Stewart was fired by Cracker Barrel on January 11, 2008, and didn't have access to his work computer that day.

There are a few disputed facts:

- Andrews claims that Stewart told her before she left Caseyville that her transfer had been approved. Stewart denies saying this.

- Andrews claims that she spoke with Stewart on January 5, 2008, to check on the transfer. Stewart denies that this conversation took place.

- Andrews claims that Stewart told her that he would take care of getting her a shift at the Mt. Vernon restaurant. Stewart denies this, saying that after Andrews rejected the closing hours on Fridays and Saturdays, he turned the process over to her.

Construing these few disputed facts in Andrews's favor, as we must at this stage, does not fill a fundamental gap in her case. Her own admissions and the uncontested facts establish that she was not fired. True, her employment was automatically "terminated" when she failed to show up for work after her three-week paid vacation. But that was an administrative formality precipitated by her voluntary absence. Andrews wasn't forced to leave her job at Cracker Barrel (recall that she is not alleging a constructive discharge), nor was she prevented from returning after her vacation. In the absence of evidence that Andrews was involuntarily relieved of a job that she'd expressed a desire to keep, the administrative termination—triggered automatically by her extended absence from the workplace—cannot be considered a materially adverse employment action.

To shore up her theory that she was fired, Andrews directs our attention to certain entries on her "employment status" report at Cracker Barrel. On December 29, 2007—eight days

after she last worked at the Caseyville restaurant—Andrews's employment status was changed to "PENDING TERMINA-TION" effective as of December 21, her last day at Caseyville. Stewart's name appears in the "Description" field as follows: "JAY JAY STEWA00111." Andrews maintains that these record entries demonstrate that there is a genuine dispute of fact on her claim that Stewart fired her.

But nothing about this status-change report suggests that Andrews was fired. If anything, it suggests that she quit. In the "Comments" section, the status-change report expressly says that Andrews "QUIT WITH NOTICE," and the numeric coding on the document appears to correspond with the termination code for "Quit with notice (2 weeks) [Code 76]."[4] As we have noted, a separate entry on Andrews's status-change report confirms that she was eligible to be rehired by Cracker Barrel later. The computerized "termination" entry, which was recorded on January 11, 2008, and lists her termination date as December 21, 2007, is consistent with the coding in her status-change report. It is undisputed that Stewart himself was fired

---

[4] Andrews quibbles with some of these dates, arguing that if she was terminated on December 21, 2007—her actual last day of work at the Caseyville restaurant—then giving notice to Stewart on December 10 could not have been two weeks' notice. But the status-change report wasn't entered until December 29, 2007, and the final entry of "termination" didn't occur until January 11, 2008. The fact that Andrews received a check for accrued vacation time on January 24, 2008, with a "week-ending date" of January 18 and a "check date" of January 22, reinforces the idea that Andrews's termination wasn't formalized until the system administratively terminated her employment on January 11, listing her last day of work as her termination date.

on January 11 and didn't have access to his company computer that day. It is also undisputed that if an employee fails to report for work for more than three weeks, the Cracker Barrel computer system automatically initiates an administrative "termination." Andrews's claim that Stewart fired her is supported by nothing more than her speculation.

Finally, Andrews complains that Cracker Barrel's record of the circumstances surrounding her termination is inconsistent because it lists Andrews as having quit with two weeks' notice, but it also lists her employment status as terminated administratively when she did not show up for work for more than three weeks. No doubt there are unexplained inconsistencies here. It's not clear why the December status-change report listed Andrews's employment status as "PENDING TERMI-NATION" given that she was at that time in the middle of an approved vacation. It's also unclear whether the computerized personnel record system covers employees at all Cracker Barrel restaurants or whether it covers only Caseyville employees. But these unanswered questions are immaterial. Even if Andrews is correct that Cracker Barrel's personnel records are inconsistent, it does not follow that she was fired. There is no evidence supporting her claim that Stewart fired her. The inconsistency in the computerized personnel record is ultimately irrelevant.

This is not a case in which the record is "replete with credibility questions and competing versions of the facts," such that the question of whether Andrews quit or was fired "should be sorted out by the trier of fact." *Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, 464 F.3d 659, 665 (7th Cir. 2006).

Quite the contrary, we agree with the district court that there is no evidence to support a claim that Andrews suffered an adverse employment action. The undisputed facts establish that she voluntarily left her job at the Cracker Barrel in Caseyville, apparently anticipating a transfer to the Mt. Vernon restaurant. But she never formally applied for a transfer and was not offered a shift or a start date at the other restaurant. And she concedes that she never returned to work at the Caseyville restaurant after her paid vacation expired.

Because Andrews did not suffer an adverse employment action, all of her claims necessarily fail, and the district court properly entered summary judgment for Cracker Barrel.

AFFIRMED.